```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
ALEXANDRIA L. COARD ADUKPO,                                       :
                                                                  :
                         Plaintiff,                               :   MEMORANDUM DECISION
                                                                  :   AND ORDER
            - against -                                           :
                                                                  :   19-cv-2709 (BMC)
NANCY A. BERRYHILL, Acting Commissioner                           :
of Social Security,                                               :
                                                                  :
                         Defendant.                               :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not entitled to Social Security Disability benefits under the Social Security Act.

Plaintiff raises three points of error. First, plaintiff contends that the ALJ improperly relied upon the opinion of a non-examining physician over the opinion of a treating physician. Second, plaintiff contends that the ALJ failed to properly evaluate the severity of her medical conditions. Third, plaintiff contends that the ALJ's Residual Functional Capacity conclusion is not supported by the record. For the reasons stated below, plaintiff's motion for judgment on the pleadings is denied and the Commissioner's cross-motion for judgment on the pleadings is granted.

I.

Plaintiff first claims that the ALJ "only afforded [her] treating psychiatrist's opinion 'partial weight' and instead afforded the opinion of the non-examining State agency psychological consultant 'great weight.'" She says this was error because the psychiatrist's

opinion is well-supported by the record whereas the consultant's opinion was "based on an incomplete medical record lacking nearly all psychiatric records and there was no treating relationship."

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).  If the ALJ does not afford a treating physician's opinion controlling weight, she must still "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

Among the factors that the ALJ must consider when deciding whether to give a treating physician's opinion a certain weight are "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 129 (internal quotations and alterations omitted).  If, however, "a searching review of the record" assures the reviewing court "that the substance of the treating physician rule was not traversed," the court should affirm the ALJ's decision despite her "failure to 'explicitly' apply the Burgess factors."  See Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) (*colatus*[1]).

Furthermore, a non-examining medical source's opinion may "override treating sources' opinions, provided they are supported by evidence in the record."  See Schisler v. Sullivan, 3

---

[1] I.e., edited citation.

2

F.3d 563, 568 (2d Cir. 1993). "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). Moreover, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barhart, 312 F.3d 578, 588 (2d Cir. 2002).

As for the treating psychiatrist's opinion, Dr. Donn Wisdershine completed a questionnaire on behalf of plaintiff, indicating at the top that he had been treating plaintiff on a weekly basis for about a year and eight months. Dr. Wisdershine wrote that plaintiff suffers from severe bipolar disorder, accompanied by mood swings, reckless behavior, poor sleep, and irritability. He further listed plaintiff's current symptoms as including "unstable mood, crying spells, difficulty concentrating, feeling of hopelessness, overwhelmed by medical condition (fibroids), history of rage episodes, breaks things when angry, auditory hallucinations (voices praying, singing gospel), poor family relationships, [and a] pattern of unstable romantic relationships." For these symptoms, however, Dr. Wisdershine prescribed no medication, noting that this was plaintiff's own choice.

The questionnaire then inquires of plaintiff's most recent status examination, for which Dr. Wisdershine described her as being "clean and casually dressed, attitude is cooperative, behavior normal." Further, she was oriented, alert, able to maintain focus, and had a normal memory. However, he also expressed that her speech was sometimes "pressured & tangential"; her mood and affect "labile"; and her insight and judgment "inappropriate w/ some understanding of problems."

Under the "Current Functional Assessment" heading, Dr. Wisdershine wrote that "[Activities of Daily Living] are good. Ms. Coard is able [to] shop, cook and clean on her own. She is able to take public transportation. Ms. Coard engages in hobbies such as singing and

exercises regularly." The only limitation Dr. Wisdershine noted under the "Ability to Function in a Work Setting" prompt was that "Ms. Coard reports not being able to stand for long periods due to medical condition." He further noted that plaintiff was not limited in her understanding or memory as they pertain to work related activities, but that she has a history of conflict in work environments and has difficulty setting realistic goals. Plaintiff also reported to Dr. Wisdershine that she has suicidal ideation during menstruation, though she has not planned to commit suicide.

The ALJ gave

> partial weight to the opinion of [Dr. Wisdershine] that the claimant has no limitation in understanding and memory; and is limited in sustaining concentration and persistence, social interaction, and adaptation due to mood instability, limited insight, and difficulty setting realistic goals. This opinion is vague in that [the limitations] are not stated in defined terms and inconsistent with the contemporaneous treatment records showing greater functionality. Further, this opinion is based in part on the claimant's self-reported history of conflicts in work environments. However, the medical evidence of record does support some limitations in interacting with others and sustaining concentration.

The Court perceives no error in the ALJ's conclusion that Dr. Wisdershine's opinion deserves only partial weight. The vagueness of which the ALJ speaks is presumably the lack of specific qualitative or quantitative benchmarks for the suggested limitations. Saying only that plaintiff is "limited" because she has "a history of conflict in work environments" and "has difficulty setting realistic goals" conveys very little about the duration, intensity, types of environment, or demandingness of work that she can withstand on a daily basis. And as for inconsistency with contemporaneous records, the state psychologist and the consultative examiner both concluded that plaintiff was not meaningfully limited in terms of attention, concentration, memory skills, or cognitive functioning. In addition, the depression screening report created about a month after Dr. Wisdershine's May 19, 2016 questionnaire contradicts the

4

vague limitations he described. Specifically, the June 21, 2016 screening report shows that plaintiff answered "No" or "Not at all" to the following questions:

> In the last 2 weeks . . .
>
> Have you been bothered by little interest or pleasure in doing things? No.
>
> Feeling down, depressed or hopeless? No.
>
> Trouble falling or staying ales, or sleeping too much? Not at all.
>
> Poor appetite or overeating? Not at all.
>
> Feeling bad about yourself or that you are a failure or have let yourself or your family down? Not at all.
>
> Trouble concentrating on things, such as reading the newspaper or watching television? Not at all?
>
> Moving or speaking slowly that other people could have noticed? Or the opposite – being fidgety? Not at all.
>
> Thoughts that you would be better off dead? Not at all.

These answers all support the "partial weight" afforded to Dr. Wisdershine's opinion that plaintiff's depression limits her functionality.

Moreover, even had the ALJ adopted Dr. Wisdershine's opinion in full, and gave it great weight toward the disability determination, it is doubtful that such a change would have altered the overall decision. The only specific work limitations listed – a tendency toward conflict in work environments and difficulty setting realistic goals – do not convey a significant inability to find or maintain work in the national economy. Moreover, the ALJ would have also had to give the same weight to Dr. Wisdershine's *positive* findings, such as that plaintiff was not limited in understanding or memory and that there are no "other conditions significant to recovery." Therefore, the ALJ's conclusion in this regard was not reversible error, if it was error at all. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (finding remand "unnecessary" where there was "no reasonable likelihood" that a new consideration "would have changed the ALJ's determination that Petitioner was not disabled").

5

As for the state agency psychological consultant, Dr. E. Selesner, the ALJ gave "great weight" to his opinion that

> the claimant could follow supervision, relate adequately with coworkers, sustain attention, and respond to changes in the work setting. This opinion is generally consistent with the mental health treatment records showing cooperative behavior and adequate eye contact. This opinion is also consistent with mental status examinations showing grossly normal memory, attention, and concentration.

This conclusion is consistent with the evidence in the record. Indeed, at least some of these conclusions are even supported by Dr. Wisdershine's opinion, in addition to the depression screening discussed above. Although the documents described by the ALJ as consistent with Dr. Selesner's opinion don't necessarily compel the level of deference afforded to it, remand would again not be reasonably likely to change the outcome because the ALJ's conclusion is also supported by substantial non-opinion evidence from plaintiff's treatment record. See id.

In addition, plaintiff alleges that Dr. Selesner's opinion "was based on an incomplete medical record lacking nearly all psychiatric records." Specifically, plaintiff says that "aside from the consultative examination ("CE") report of March 25, 2016, [Dr. Selesner] had only one [two-page] mental health record from August 2014" and he did "not discuss her endometriosis when determining disability." However, this description leaves out that Dr. Selesner reviewed numerous other items from plaintiff's medical record, including her Activities of Daily Living ("ADL") report, her work history, four items of Medical Evidence of Record ("MER") from Weill Cornell Imaging, an MER from New York Presbyterian, and two consultative examiner reports. Moreover, Dr. Selesner acknowledged plaintiff's pain symptoms and identified her "Disorders of the Female Genital Organs" as "severe," medically determinable impairments. In particular, he expressly found that plaintiff has "a history of mennorhagia and fibroids."

6

Thus, even if not based on the exhaustive record, Dr. Selesner's opinion was certainly informed by a sizeable corpus of evidence and also addressed both plaintiff's mental issues and her uterine disorders. In any event, as discussed above, the ALJ's decision is sufficiently supported by the non-opinion medical evidence.

II.

Plaintiff next claims that the ALJ failed "to properly evaluate severe and well-documented medical conditions." Plaintiff contends the ALJ erred in this regard in two respects. First, she says that it was error not to determine that plaintiff's anxiety, borderline personality disorder, narcissistic personality disorder, anemia, menorrhagia, or hearing loss to be "severe" impairments. Second, she says that the ALJ did not give proper weight to plaintiff's subjective complaints of pain.

**A. Severity**

According to 20 C.F.R. § 404.1522(a), "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, using judgment, responding appropriately to others, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

The analysis at this stage sets a low bar and is meant only to "screen out *de minimis* claims" in which the claimant merely exhibits "slight abnormalities that do not significantly limit any basic work activity." See Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (quoting Bowen v. Yuckert, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring). Indeed, an impairment having anything more than a "minimal effect" on a claimant's ability to engage in basic work

7

activities would be considered severe. See 20 C.F.R. §§ 404.1522, 416.922; SSR 85-28. But once an ALJ determines that a claimant does not have a severe impairment, this Court would have to find that the ALJ's decision was unreasonable, i.e. "a reasonable mind" would not have found the evidence "adequate to support [the] conclusion," in order to reverse her. See Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Moreover, "[w]here an ALJ excludes certain impairments from the list of severe impairments at the second step, any such error is harmless where the ALJ identifies other severe impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps." See Calixte v. Colvin, No. 14-cv-5654, 2016 WL 1306533, at *23 (E.D.N.Y. Mar. 31, 2016) (citing O'Connell v. Colvin, 558 F. App'x 63, 65 (2d Cir. 2014)); Woodmancy v. Colvin, 577 F. App'x 72, 74 n.1 (2d Cir. 2014) ("[W]e identify no error warranting remand because the ALJ did identify severe impairments at step two, so [plaintiff]'s claim proceeded through the sequential evaluation process, in which all of [plaintiff]'s ailments were part of the analysis.").

Here, the ALJ determined that plaintiff had severe impairments of endometriosis, myofascial pain syndrome, bipolar disorder, and post-traumatic stress disorder, saying that these conditions "significantly limit the ability to perform basic work activities as required by SSR 85-28." But plaintiff argues that by omitting anxiety, borderline personality disorder, narcissistic personality disorder, anemia, and hearing loss as severe impairments, the ALJ failed to take into account plaintiff's difficulties in relating to and interacting with others; dealing with stress; maintaining a regular schedule; and maintaining pace, concentration, and persistence.

Even if the ALJ erred by not finding these other impairments to be severe, she did in fact consider all of these symptoms during subsequent steps in her analysis for plaintiff's other severe impairments.  In particular, she addressed these symptoms during the course of considering the plaintiff's other personality and emotional disorders – bipolar disorder and post-traumatic stress disorder.  For example, at Step Three (determining whether a claimant's impairments meet or equal a Listing), the ALJ found that plaintiff had a moderate limitation in interacting with others:

> In interacting with others, the claimant has a moderate limitation.  The claimant's mental health treatment records not a wide variety of social activities, including socializing with boyfriends, attending church, chatting with people online, and intermittently doing hair.  She is generally noted to be cooperative and to make appropriate eye contact.  However, treatment records also indicate pressured speech as well as labile mood and affect at times.  Additionally, her mental health treatment records note difficulty setting appropriate boundaries in her relationships with others.

The ALJ likewise found a moderate limitation for pace, concentration, and persistence:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation.  At the consultative psychological examination, the claimant's attention and concentration were intact with ability to do counting, addition, multiplication, and serial 3's subtractions from 20.  Her insight and judgment were fair.  At mental health examinations, her concentration and attention are at times within normal limits and at other times she is distracted.  Additionally, her thought processes are sometimes logical and coherent and sometimes tangential.

Finally, the ALJ found that plaintiff only had a "mild limitation" for adapting and managing herself on a regular schedule:

> The claimant's mental health treatment records show a wide range of daily activities, including taking public transportation, exercising, and attending scheduled appointments.  She is generally well groomed and does not report needing assistance with personal care tasks or daily activities.  Her treating mental health provider stated that the claimant was able to shop, cook, clean, and take public transportation on her own and that the claimant engaged in hobbies such as singing and exercising regularly.

In addition, the ALJ acknowledged that plaintiff's complaints of abdominal pain related to her endometriosis "support the limitations to sedentary work." There is thus no question that the ALJ considered all of plaintiff's symptoms in a holistic fashion at subsequent steps.

## B. Credibility

An "ALJ must make credibility findings when there is conflicting evidence with respect to a material issue such as pain." Donato v. Sec'y of Dep't of Health & Human Servs. of U.S., 721 F.2d 414, 418 (2d Cir. 1983). Pursuant to SSR 16-3P, in assessing a claimant's subjective symptoms,[2] an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms . . . and any other relevant evidence in the case record."

Assuming "the subjective evidence of [a claimant's] pain" is sufficient to establish her disability, if the ALJ did "not consider the credibility of [a claimant's] claims of disabling pain, but instead rejected her claims on the ground that objective, clinical findings did not establish a cause for such intense pain," then the decision should be reversed and the case remanded. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). However, in considering a plaintiff's complaints of pain, "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Id. Evidence such as the claimant's daily activities; the location, duration, frequency, and intensity of her pain; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; and other pain relief measures may also be considered. 20 C.F.R. § 404.1529(c)(4).

---

[2] The previous policy statement, SSR 96-7, used the term "credibility" to refer to the assessment of a claimant's subjective symptoms. In 2017, SSR 16-3P superseded SSR 96-7p, and eliminated the use of the term "credibility" to clarify that "subjective symptom evaluation is not an examination of an individual's character," as some adjudicators presumably believed.

10

Plaintiff argues that her "gynecological conditions" caused her severe pain for extended periods of time, but that "the ALJ minimized [her] pain because 'her treatment since 2-17 has been generally conservative with hormone therapy recommended rather than a hysterectomy.'" At the hearing, plaintiff testified that

> [e]very month, for about seven to ten days I'm paralyzed.  I'm literally bedridden. I'm constipated.  I'm dealing with hemorrhoids.  I'm dealing with constant vomiting, inflammation of the stomach, inflammation of the body, shooting pains through my back, my hips, my legs.

It seems likely that if the ALJ were to have fully accepted plaintiff's testimony regarding her abdominal pain, she would have found plaintiff disabled.  However, she ultimately determined that "[t]he claimant's allegations are not fully consistent with the objective and other evidence."

Although the ALJ did not expressly address the "credibility" of plaintiff's testimony, at least in so many words, she also did not reject the complaints on the basis of only the objective, clinical findings.  For example, the ALJ noted that "since 2015 [plaintiff] has consistently reported to her mental health providers that she exercises frequently to get into shape."  Plaintiff also reported participating in a 300 squats per day challenge and that she "had been running" as late as February 2018.  In addition, the ALJ observed that plaintiff's "weekly verbal therapy treatment notes reflect a wide range of physical activities including exercising regularly, doing hair [as a job] at least intermittently, traveling out of state by bus, using public transportation, and attending church.

The ALJ also found plaintiff's recent medical treatments to have been "generally conservative."  For example, plaintiff received hormone therapy instead of a hysterectomy.  In addition, her primary care physician only prescribed ibuprofen and a muscle relaxer as needed for pain, and plaintiff never received the "bed bound care, ambulation exercises, [vital signs monitor], occupational therapy, or any other medical treatment" that the doctor instructed could

11

be beneficial. Of course, an ALJ may not conclude solely from such conservative treatment that a claimant is not disabled, see Burgess, 537 F.3d at 129, but it is certainly a relevant consideration in conjunction other consistent evidence, see Netter v. Astrue, 272 F. App'x 54, 56 (2d Cir. 2008).

Moreover, the ALJ did not *reject* the complaints of pain, but in fact considered it severe enough to limit plaintiff's RFC to sedentary work, with the additional limitations of only "occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and needing [to] sit and stand at her workstation as needed." The ALJ therefore did not procedurally err in discounting plaintiff's subjective testimony, and her findings regarding plaintiff's attendant limitations were not so unreasonable as to require remand or reversal. See Richardson, 402 U.S. at 401.

III.

Plaintiff's final contention is that the ALJ's Residual Functional Capacity ("RFC") determination was deficient, and thus the job opportunities identified by the Vocational Expert were likewise deficient. Specifically, plaintiff argues that the ALJ failed to incorporate plaintiff's pain/gynecological symptoms, "nonexertional mental limitations," and hearing restrictions in the hypothetical scenario posed to the Vocational Expert.

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ will assess a claimant's RFC by considering "all of the relevant medical and other evidence." Id. (a)(2). If the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, her decision must be affirmed. See Richardson, 402 U.S. at 401-02. The substantial evidence standard requires that a decision be supported "by more than a mere scintilla" of evidence, or, otherwise stated, "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401 (quoting Consol. Edison Co., 305 U.S. at 229). Again, "once an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (emphasis in original) (*colatus*).

The ALJ ultimately concluded that plaintiff has the residual functional capacity to perform simple, routine, sedentary work as defined in 20 C.F.R. § 416.967(a), with certain exceptions. In reaching that conclusion, the ALJ in fact *did* consider plaintiff's pain and other gynecological symptoms and spent a great deal of space detailing her specific uterine and abdominal issues. The ALJ rejected the proposed intensity and duration of those symptoms, however, citing that plaintiff "has consistently reported to her mental health providers that she exercises frequently to get into shape; does 300 squats a day and runs on a regular basis; has performed intermittent work as a hair beautician; has taken numerous weekend trips to North Carolina; socializes and attends parties on those trips; and receives a conservative treatment with hormone therapy and over-the-counter pain medications.

The ALJ also considered plaintiff's mental limitations in arriving at an RFC, but still concluded that her symptoms "support the limitations to [do] simple, routine work with no strictly enforced production quotas." Counseling against a more restrictive RFC were plaintiff's fertile social life; "wide range of activities including exercising regularly, doing hair at least intermittently, socializing with boyfriends, chatting with people online, and attending church"; generally intact memory, attention, and concentration; cooperative behavior during therapy sessions; and self-reported improvements in symptoms of depression, mood swings, and anxiety. Moreover, as discussed above, even if the ALJ were to have afforded full weight to Dr.

13

Wisdershine's opinion of plaintiff's mental limitations, there is little reason to believe that they could have meaningfully moved the needle toward a more restrictive RFC.

Although plaintiff is correct that the ALJ did not address the effects of her hearing loss in the decision, as the Commissioner points out, plaintiff also "did not allege any limitations due to hearing loss in her application for benefits." It is true that plaintiff mentioned during the administrative hearing that she wears a hearing aid, but there is no indication that she was having any difficulty understanding the ALJ during that proceeding. Plaintiff offers no reason to believe that, with the hearing aid, her auditory deficiencies would further affect her ability to work. This is especially the case for the jobs identified by the Vocational Expert – among them, document clerk, envelope addresser, and surveillance system monitor[3] – which don't tend to require extensive communication or interaction with others.

Finally, of particular concern to plaintiff is that the "VE testified that the acceptable tolerance by employers in terms of employee absenteeism and missed days is once a month," yet plaintiff insists that the ALJ failed to acknowledge her "inability to maintain a regular schedule." This is not a totally unfounded concern as plaintiff offers sufficient evidence to raise the possibility that her symptoms would force her to miss more than one day of work per month. To be sure, her hearing testimony indicated that she could be out of work for several days at a time on a regular basis. But the ALJ found, and the record sufficiently supports, that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." That conclusion took into account the absentee allowances for new, unskilled employees suggested by the Vocational Expert.

---

[3] These were the jobs identified at the sedentary level, which is more restrictive than plaintiff's actual RFC. The Vocational Expert also identified housekeeper, clerical assistant, and packager under the assumption that plaintiff could occasionally climb stairs and ramps; occasionally balance, stoop, kneel, crouch and crawl; but never climb ladders, ropes, or scaffolds.

## CONCLUSION

Plaintiff's [12] motion for judgment on the pleadings is denied and the Commissioner's [15] cross-motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
      June 22, 2020